**ASSOCIATED DRY GOODS CORPORATION, Plaintiff,**

v.

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al., Defendants.**

**Civ. A. No. 75–0297–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

July 20, 1982.

Hill B. Wellford, Jr., Hunton & Williams, Richmond, Va., and Roger S. Kaplan, Jackson, Lewis, Schnitzler & Krupman, New York City, for plaintiff.

Anthony DeMarco, Washington, D. C., and G. Wingate Grant, Asst. U.S. Atty., Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Associated Dry Goods Corporation ("Associated"), brought this action challenging certain practices of the defendant, Equal Employment Opportunity Commission ("EEOC") regarding disclosure of EEOC investigative files to charging parties. The facts surrounding this matter have been fully set out in prior opinions of this Court,[1] the Court of Appeals for the Fourth Circuit,[2] and the Supreme Court.[3]

The Supreme Court held that the proscription of disclosure to the "public" of information in EEOC investigative files found in § 706(b), 42 U.S.C. § 2000e–5(b), and § 709(e), 42 U.S.C. § 2000e–8(e), of Title VII does not include a charging party to the extent of disclosure to such a party of the content of his own file. Thus, ruled the Court, EEOC regulations contained in 29 C.F.R. §§ 1601.22 and 1610.17(d) and in § 83 of the agency's Compliance Manual[4] did not contravene the statutory ban on

---

1. *Associated Dry Goods Corp. v. EEOC*, 454 F.Supp. 387 (E.D.Va.1978).

2. *EEOC v. Joseph Horne Co.*, 607 F.2d 1075 (4th Cir. 1979).

3. *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981).

4. 29 C.F.R. § 1610.17 provides, in relevant part:

(b) Section 706(b) of title VII provides that the Commission shall not make public charges which have been filed. It also pro-

vides that (subsequent to the filing of a charge, an investigation, and a finding that there is reasonable cause to believe that the charge is true) nothing said or done during and as a part of the Commission's endeavors to eliminate any alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion may be made public by the Commission without the written consent of the parties concerned; nor may it be used as evidence in a subsequent proceeding. Any officer or employee of the Commission who shall make public in any

public disclosure by authorizing pre-suit disclosure to a charging party of materials contained in his or her own file. A charging party is, however, a member of the "public" with respect to EEOC files on charges by other employees and information in files other than his own may not be revealed to him. The Court then remanded the case to the Court of Appeals, which in turn remanded it to this Court, to consider

two other claims raised by Associated in its complaint and not addressed by the Court in its original opinion. The parties have filed cross-motions for summary judgment on the remaining issues.

Associated contends that the EEOC rules regarding disclosure are invalid because: (1) the rules are "substantive" regulations and the EEOC has statutory author-

manner whatever any information in violation of section 706(b) shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or imprisoned not more than 1 year.

(c) Section 709 of title VII authorizes the Commission to conduct investigations of charges filed under § 706, engage in cooperative efforts with State and local agencies charged with the administration of State or local fair employment practices laws, and issue regulations concerning reports and record-keeping. Section (e) of section 709 provides that it shall be unlawful for any officer or employee of the Commission to make public in any manner whatever any information obtained by the Commission pursuant to its authority under section 709 prior to the institution of any proceeding under the act involving such information. Any officer or employee of the Commission who shall make public in any manner whatever any information in violation of section 709(e) shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or imprisoned not more than 1 year.

(d) Special disclosure rules apply to the case files for charging parties, aggrieved persons on whose behalf a charge has been filed, and entities against whom charges have been filed. The special disclosure rules are available in the public reading areas of the Commission. Under sections 706 and 709, case files involved in the administrative process of the Commission are not available to the public.

29 C.F.R. § 1601.22 states:

Neither a charge, nor information obtained pursuant to section 709(a) of Title VII, nor information obtained from records required to be kept or reports required to be filed pursuant to section 709(c) and (d) of Title VII, shall be made matters of public information by the Commission prior to the institution of any proceedings under this Title involving such charge or information. This provision does not apply to such earlier disclosures to charging parties, or their attorneys, respondents or their attorneys, or witnesses where disclosure is deemed necessary for securing appropriate relief. This provision also does not apply to such earlier disclosures to representatives of interested Fed-

eral, State, and local authorities as may be appropriate or necessary to the carrying out of the Commission's function under Title VII, nor to the publication of data derived from such information in a form which does not reveal the identity of charging parties, respondents, or persons supplying the information.

The special disclosure rules referred to by § 1610.17(d) are found in § 83 of the EEOC Compliance Manual. § 83.5 provides:

83.5 *Persons to Whom Information in Case Files May be Disclosed —*

Information in case files may be disclosed on request, after complying with the expunction requirements discussed in 83.6, to *only* the following persons:

(a) Charging Parties and their attorneys (except as otherwise provided in 83.5(c) below);

(b) Aggrieved persons in case files involving Commissioner Charges and their attorneys provided that such persons have been notified of their status as aggrieved persons pursuant to section 1601.25(c) of the Commission's Procedural Regulations;

(c) Persons or organizations filing on behalf of an aggrieved person, provided that the aggrieved person has given written authorization to the person who filed on his or her behalf to act as the aggrieved person's agent for this purpose and their attorneys;

(d) Employees of Commission funded groups such as the Mexican-American Legal Defense and Education Fund and Lawyer's Committee for Civil Rights Under Law for the purpose of reviewing information in case files to determine the appropriateness of referral to private attorneys as a service to charging parties, provided that the conditions in 83.4 and 83.6 have been met and that the Commission funded group is reviewing the information at the request of the charging party;

(e) Respondents and their attorneys, provided that the charging party or aggrieved person has filed suit under Title VII; and

(f) Any party in a class action complaint, provided that such party is actually named in the complaint as filed in Federal district court or is actually named by court order as a class member.

ity to promulgate only "procedural" rules; or

(2) the rules were established by the EEOC without providing the notice and opportunity for comment required by § 553 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553.

The EEOC responds by arguing that the regulations are "procedural"or "interpretative."

## I. EEOC AUTHORITY TO PROMULGATE THE DISCLOSURE RULES: THEIR LEGAL EFFECT

Congress granted the EEOC the authority to "issue, amend, or rescind suitable procedural regulations to carry out the provisions of [Title VII]." § 713(a) of Title VII, 42 U.S.C. § 2000e–12(a). This has been interpreted to preclude the EEOC from issuing substantive regulations which would have the force and effect of law. *General Electric Co. v. Gilbert*, 429 U.S. 125, 141, 97 S.Ct. 401, 410, 50 L.Ed.2d 343 (1976); *Emerson Electric Co. v. Schlesinger*, 609 F.2d 898, 902 (8th Cir. 1979); *EEOC v. Raymond Metal Products Co.*, 530 F.2d 590, 593 (4th Cir. 1976). To determine whether the EEOC had the power to issue the disclosure rules found in 29 C.F.R. §§ 1610.17, 1601.22 and § 83 of its Compliance Manual, and to ascertain the legal effect of the rules, the Court must ascertain whether the rules are "procedural," or whether they are "substantive."

The EEOC labeled the § 1601.22 and § 1610.17 disclosure rules procedural when it published them in the Federal Register.[5] Also, the May 21, 1975 "Directives Transmittal" which provided § 83 of the Compliance Manual to all manual holders dubbed the rules "procedures for making available information contained in case files of EEOC." These labels, however, are not controlling, and the Court must determine what the agency did in fact. *Brown Express, Inc. v. United States*, 607 F.2d 695 (5th Cir. 1979); *Standard Oil Co. v. Department of Energy*, 596 F.2d 1029 (Temp. Emer.Ct.App.1978); *Lewis-Mota v. Secretary of Labor*, 469 F.2d 478 (2nd Cir. 1972).

The EEOC now argues that the disclosure rules are both interpretative of the Title VII dictate that charges not be "made public," and procedural, in that they were designed to provide guidance to EEOC field offices on how to handle requests for disclosure of the contents of the agency's investigative files. Associated, on the other hand, contends that the regulations affect substantive rights of the parties involved, since they govern access to information which aids a party in deciding whether to settle or litigate, and they discriminate in favor of a charging party by granting him or her first access to the files. The Court postpones consideration of the EEOC's argument that the rules are interpretative until after discussion of the substantive-procedural distinction.

A substantive rule is one which "affects individual rights and obligations." *Chrysler Corporation v. Brown*, 441 U.S. 281, 302, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979), quoting from *Morton v. Ruiz*, 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974); *Emerson Electric Co. v. Schlesinger, supra*, 609 F.2d at 902; *Lewis-Mota v. Secretary of Labor, supra*, 469 F.2d at 482. The Court of Appeals for the Fourth Circuit used this definition of "substantive" in its *Raymond Metal* ruling that Congress intended to limit the EEOC "to making rules for conducting its business, and to deny it the power to make substantive rules that create rights and obligations." 530 F.2d at 593.

A bit of a detour is inevitable here. Apparently, some courts have equated the substantive-procedural test used to determine whether an agency had statutory authority to issue a rule and its resulting legal effect with that used to ascertain the applicability of the notice and comment procedures of § 553 of the APA to an agency's rulemak-

---

**5.** § 1601.22 was published as a proposed rule at 42 Fed.Reg. 42022 *et seq.* (1977) and in final form at 42 Fed.Reg. 47828 *et seq.* (1977). The earlier notice invited public comment on the regulation. § 1610.17 was issued, without any prior notice and comment, at 40 Fed.Reg. 8171 *et seq.* (1975).

ing. Under § 553(b)(3)(A), notice and comment procedures are not required when an agency issues "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice...." The Court of Appeals for the Fourth Circuit analyzed this § 553 applicability problem in *Reynolds Metals Co. v. Rumsfeld,* 564 F.2d 663, 669 (4th Cir. 1977), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1646, 56 L.Ed.2d 84 (1978), stating:

> To draw the line between substance and procedure in the context of administrative rulemaking, courts have generally held that notice and comment is required if the rule makes a substantive impact on the rights and duties of the person subject to regulation. If the rule does not have such an impact, it is exempt from the notice and comment procedures of the statute. [citations omitted]; *cf. EEOC v. Raymond Metal Products Co.,* 530 F.2d 590, 593 (4th Cir. 1976).

This statement of the rules, as well as the Court's reference to *Raymond,* imply that a similar analysis governs the substantive-procedural inquiry into the agency's authority to issue a rule and the distinction between those "procedural" rules which are exempt from § 553 and those "substantive" rules which are not. *Accord, Emerson Electric Co. v. Schlesinger, supra,* 609 F.2d at 902. This is not to say that the question of whether a rule is legislative and thus has the force of law and the question of the applicability of § 553 are identical, for they are not. The former issue turns also on an examination of the statutory power granted an agency, and the Court rejects any notion that the impact of a rule can alone give it the *force of law. See Chrysler Corporation v. Brown, supra,* 441 U.S. at 302, 99 S.Ct. at 1717; K. Davis, *Administrative Law Treatise* §§ 7:15, 7:16 (2d ed. 1979) ("Davis"). The narrow position of the Court here is that where an agency is granted statutory power to promulgate procedural, but not substantive rules, the test used by those courts which assign such labels to a rule in order to characterize a regulation as "procedural" or "substantive" for purposes of determining the agency's authority to issue

the rule resembles that used by such courts to distinguish "procedural" rules exempt from § 553 from those "substantive" rules which are not—both require examination of the nature of the impact of the rules on the rights and duties of the parties involved. To resolve the question of the EEOC's authority to issue the disclosure rules in dispute in the instant action, the Court must determine whether such rules have a substantive impact on the parties affected.

§ 1610.17(b) and (c) describe the penalties imposed on EEOC employees who disclose information in violation of § 706(b) or § 709 of Title VII. Section 1610.17(d) provides that "special disclosure rules" apply to charging parties, aggrieved persons on whose behalf a charge has been filed, and entities responding to charges. Section 1601.22 contains a similar prohibition of prelitigation disclosure of the contents of EEOC files, allowing such disclosure to charging parties, their attorneys, respondents or their counsel, and witnesses "where disclosure is deemed necessary to securing appropriate relief." The net effect of the rules set out in § 83 of the Compliance Manual is that charging parties and their attorneys, aggrieved persons and their counsel, persons or organizations filing on behalf of an aggrieved person, and employees of EEOC-funded groups are allowed access to the files once 180 days have passed after the charge is filed, or once the party demonstrates a "compelling need" for access before such time, while employers and other entities responding to a charge are granted access only if the charging party has filed suit under Title VII. §§ 83.3(a), 83.5. In its briefing and at oral argument, the EEOC has presented several alternative rationales behind these regulations. On this point, it argues that the rules were designed merely to establish the procedures by which the agency's employees are to handle disclosure requests. Associated contends that the rules have a substantive impact on the parties and are beyond the scope of the rulemaking authority granted the EEOC by Congress in § 713(a) of Title VII, 42 U.S.C. § 2000e-12(a). Because the

plaintiff complains only of § 1610.17(d), § 1601.22 and §§ 83.3(a) and 83.5 of the Compliance Manual, only these sections are at issue and need be addressed.

The Court seeks guidance from other courts which have addressed similar problems. The defendant employer in *EEOC v. Raymond Metal Products Co., supra,* attached the validity of the Commission's regulation [6] which delegated to district directors the authority to dismiss charges, issue determinations as to reasonable cause, and make and approve conciliation agreements. The defendant contended that the regulation was substantive and thereby outside the agency's rulemaking power under 42 U.S.C. § 2000e–12(a). The court, ruling that the EEOC was limited to "making rules for conducting its business . . ." and lacked the power to make "substantive rules that create rights and obligations," concluded that the subject regulation merely prescribed the methods by which the agency acted and upheld the rule as procedural. The administrative actions of the agency, said the Court, "do not in themselves enforce any rights or impose any obligation," for this can be done only by a voluntary conciliation agreement or by a court after a trial. 530 F.2d at 593.

The court addressed the substantive-procedural distinction in determining the applicability of § 553 to EEOC action in *Reynolds Metals Co. v. Rumsfeld, supra.* There, Reynolds Metals sought declaratory and injunctive relief from the operation of a "Memorandum of Understanding" between the EEOC and the Department of Labor's Office of Federal Contract Compliance Programs ("OFCC"), which is charged with the responsibility of eliminating employment discrimination on the part of federal contractors. Paragraph 10 of this Memorandum provided that charges filed with the OFCC were deemed to be filed as well with the EEOC and were to be transmitted promptly to the appropriate EEOC office. Reynolds Metals contended that the EEOC's failure to follow § 553 notice and comment procedures in adopting this term of the Memorandum rendered it invalid. The court rejected this argument and upheld the rule, concluding that paragraph 10 neither increased nor diminished the company's rights and duties under Title VII. Rather, said the court, it merely provided an expeditious means of transmitting to the EEOC complaints which should have been filed with it initially. The court saw this procedure as a reasonable and efficient means of processing these complaints by providing for their prompt consideration.

The court in *Pickus v. United States Board of Parole,* 507 F.2d 1107 (D.C.Cir. 1974), faced the question of the applicability of § 553 to the Board's issuance of the table it used to compute the range of months an inmate would be required to serve according to the severity of his offense and his salient factor score. Defining "procedural" as "technical regulation of the form of agency action and proceedings," the court distinguished such rules from action which "goes beyond formality and substantially affects the rights of those over whom the agency exercises authority." 507 F.2d at 1113. The court held that the Board's parole determination guidelines were substantive for they defined the framework to circumscribe the Board's broad statutory power and had great impact on an inmate's chances for parole.

Using this test of substantive impact on the rights and obligations of affected parties, other courts have classified as procedural for purposes of § 553 a freeze placed on the processing of applications for radio broadcast stations,[7] procedures accelerating the processing of applications for abandoning railroad lines,[8] the Energy Information Administration's guidelines for the sharing

---

**6.** 29 C.F.R. § 1601.196(d).

**7.** *Kessler v. FCC,* 326 F.2d 673, 680 (D.C.Cir. 1963) (substantive rules "are those which change standards . . ." while procedural rules "are those dealing with the method of opera-

tion utilized by the Commission in the dispatch of its business . . .").

**8.** *Pennsylvania v. United States,* 361 F.Supp. 208 (M.D.Pa.), *affirmed,* 414 U.S. 1017, 94 S.Ct. 440, 38 L.Ed.2d 310 (1973).

of its information with other federal agencies,[9] similar guidelines established by the EEOC [10] and the EEOC's amendments to its regulations eliminating the parties' opportunity to review and comment on the factual basis of a proposed EEOC determination on a charge and the employer's option to require the agency to issue a right to sue notice.[11] On the other hand, courts have seen as substantive, in addition to those cases described above, the Department of Labor's change in its statistical methodology for determining unemployment rates while implementing the Comprehensive Employment and Training Act.[12]

Applying these principles to the instant action, the Court concludes that the sort of disclosure rules involved here trench upon the rights and obligations of the parties affected and thus are without the scope of the EEOC's authority to issue "procedural" rules. Such rules do more than merely prescribe the methods by which the agency acts when it receives disclosure requests, and the EEOC views them as having purposed beyond that of establishing a rule by which the agency is to conduct its business. The regulations contained in § 1610.17(d), § 1601.22, and §§ 83.3(a) and 83.5 of the Compliance Manual certainly affect and create the rights of charging parties, respondents and members of the public to access to the information contained in the EEOC's investigative files. Access to this information can in turn have a profound impact on the disposition of charges of employment discrimination and thus on the parties' respective rights and obligations under Title VII. This effect on the substantive rights and obligations of employees and employers under Title VII must be viewed in light of the Congressional blending, in that Act, of administrative and judicial means of eliminating employment discrimination. In its opinion in this action,

the Supreme Court described the statutory scheme once a charge is filed as follows:

> The Commission must then serve notice of the charge on the employer, and begin an investigation to determine whether there is reasonable cause to believe the charge is true. 42 U.S.C. § 2000e–5(b). If it finds no such reasonable cause, the Commission must dismiss the charge. *Ibid.* If it does find reasonable cause, it must try to eliminate the alleged discriminatory practice "by informal methods of conference, conciliation, and persuasion." *Ibid.* If its attempts at conciliation fail, the Commission may bring a civil action against the employer. § 2000e–5(f)(1). But Title VII also makes private lawsuits by aggrieved employees an important part of its means of enforcement. If the Commission dismisses the charge, the employee may immediately file a private action. *Ibid.* And regardless of whether the Commission finds reasonable cause, the employee may bring an action 180 days after filing the charge if by that time the Commission has not filed its own lawsuit. *Ibid.*

449 U.S. at 595, 101 S.Ct. at 820. The EEOC is empowered to examine and copy evidence in the possession of the employer, and to subpoena evidence and documents. 42 U.S.C. §§ 2000e–8(a), 2000e–9. Disclosure of the information generated by these methods can accelerate the agency's investigation by enhancing its ability to obtain information informally through revealing to the parties specific facts for them to rebut. Either party to a charge is also more likely to settle if the contents of the file are disclosed, since he is able to assess the strengths and weaknesses of his opponent's case along with his own. *See EEOC v. Associated Dry Goods*, 449 U.S. 590, 600–01, 101 S.Ct. 817, 823–24, 66 L.Ed.2d 762 (1981). Moreover, a charging party's access

---

**9.** *Shell Oil Co. v. Dept. of Energy*, 477 F.Supp. 413 (D.Del.1979), *affirmed*, 631 F.2d 231 (3rd Cir. 1980), *cert. denied*, 450 U.S. 1024, 101 S.Ct. 1730, 68 L.Ed.2d 219 (1981).

**10.** *McDonnell Douglas Corp. v. Marshall*, 465 F.Supp. 22 (E.D.Mo.1978).

**11.** *EEOC v. National Cash Register Co.*, 405 F.Supp. 562 (N.D.Ga.1975).

**12.** *Batterton v. Marshall*, 648 F.2d 694, 709 (D.C.Cir.1980) (the "critical question is whether the agency action jeopardizes the rights and interest of parties . . . .").

to the information gives him the ability to assess the feasibility of litigation, which will deter pointless litigation and help attain the statutory goal of maximum reliance on voluntary conciliation and administrative resolution of claims. *Id.* at 601–02, 101 S.Ct. at 824. These are substantive concerns, with substantive impact, for they both affect and determine the disposition of Title VII claims and the stances of the parties in the administrative or judicial phases of the Title VII statutory scheme. The disclosure governs the parties' conduct during the investigatory process by enhancing or diminishing a party's willingness to settle, and thereby affects a charging party's decision on whether to exercise his or her right to sue.

These direct effects ripple outward to influence an employee's or employer's conduct outside the actual EEOC proceedings by affecting the "standard of care" under Title VII. An employee's assessment of the possible outcome of a discrimination charge will color his decision on whether a claim should be filed and may affect his role as a "private attorney general" under the statute. Similarly, an employer's expectation as to the likelihood that a charge will be filed, a charge settled, or a lawsuit filed will influence its view of its duties under Title VII and its employment decisions.

██ This influence on the conduct of the parties both within and without the EEOC investigatory process, on the outcome of charges filed with the EEOC, and on the likelihood of litigation reveal that the seemingly procedural rules of the agency have normative or substantive effects. These effects on the rights and obligations of the parties are heightened by the fact that charging parties are allowed access to the contents of their files once 180 days have passed after the filing of the charge, or earlier if a "compelling need" is shown, while respondents are granted such access only after a suit is filed. This places the information in the hands of the charging

party alone during the investigation, while the employer will never attain the right to see the file if no suit is filed. This may afford the employee some advantage during the investigatory period. Counsel for the EEOC conceded at oral argument that this discriminatory right of access was established by the agency in order to redress a perceived informational imbalance which had existed in favor of the respondents. The EEOC also grants charging parties advance access to the files to aid them in drafting the complaint for their civil suit.[13] Clearly these are substantive concerns, with an intended normative impact beyond the investigation. The agency apparently uses the disclosure rules to fine-tune the "standard of care" under Title VII, for the more favorable position granted the employee will cause the employer to act in its employment decisions as if there were a stricter burden on it under the statute to avoid discriminatory practices. This substantive objective is also revealed by the statement in § 1601.22 that presuit disclosure is to be allowed where "deemed necessary for securing appropriate relief." This is not to say that the agency should not pursue this lofty goal. The Court concludes, however, that these normative concerns and effects place the EEOC's disclosure rules in the "substantive" category, beyond its statutory rule-making authority.

This conclusion is supported by the decision of the Supreme Court in *Chrysler Corporation v. Brown, supra,* a "reverse Freedom of Information Act" suit. There, Chrysler sought to enjoin the OFCC from disclosing certain information in its possession on the company's affirmative action programs and certain agency reports to third parties. Chrysler argued, in part, that such disclosure would violate the Trade Secrets Act, 18 U.S.C. § 1905, which prohibited disclosure by a federal employee or agency of certain information "to any extent not authorized by law . . . ." The OFCC argued that the disclosure was "authorized by law,"

---

**13.** Defendants' Memorandum in Response to Court's Order Dated March 24, 1982 at 8.

("Defendant's Response to March 24 Order").

since it was permitted under the agency's own regulations [14] governing the public disclosure of its records. Resolution of this issue rested on whether these disclosure regulations had the "force and effect of law," [15] which in turn depended on whether the regulations were "substantive" rules promulgated pursuant to a statutory grant to the agency of the authority to issue legislative-type rules, and in compliance with any procedural requirements imposed by Congress. In assessing the first aspect of this inquiry, the Court defined a substantive rule as one "affecting individual rights and obligations." 441 U.S. at 302, 99 S.Ct. at 1717. It went on to conclude that the OFCC disclosure rules were substantive. They "certainly affect individual rights and obligations . . . ," said the Court, since they "govern the public's right to information . . . " in the agency's records, and govern "the confidentiality rights of those who submit information to the [OFCC] and its compliance agencies." 441 U.S. at 303, 99 S.Ct. at 1718. In a similar vein, the corresponding EEOC disclosure rules of the EEOC govern the public's right of access to information in the agency's files, and the confidentiality rights of those who submit the information, and thus are "substantive" on the same grounds.

■ This, however, does not end the inquiry. Contrary to Associated's contention, the determination that the EEOC's disclosure rules are substantive, and not procedural, does not render them entirely void and of no effect in this Court. Rather, a substantive rule promulgated by an agency with statutory authority only to issue procedural rules must necessarily be considered as merely interpretative, regardless of its form and scope. *Batterton v. Marshall*, 648 F.2d 694, 705 (D.C.Cir.1980); *Joseph v. United States Civil Service Commission*, 554 F.2d 1140, 1154 n.26 (D.C.Cir.1977); Davis, § 7:10 at 54. *See General Electric Co. v. Gilbert, supra*, 429 U.S. at 140–41, 97 S.Ct. at 410–11. The EEOC can, of course,

issue interpretative statements or rulings, and they are entitled to judicial deference. *Albermarle Paper Co. v. Moody*, 442 U.S. 405, 431, 95 S.Ct. 2362, 2378, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971). Since the EEOC lacks the power to issue substantive rules of the type at issue in this action, the Court must determine the degree of deference they are to be accorded.

■ In general, " 'a court is not required to give effect to an interpretative regulation. Varying degrees of deference are accorded to administrative interpretations based on such factors as the timing and consistency of the agency's position, and the nature of its expertise.' " *Chrysler Corporation v. Brown, supra*, 441 U.S. at 315, 99 S.Ct. at 1724, quoting *Batterton v. Francis*, 432 U.S. 416, 425 n.9, 97 S.Ct. 2399, 2405 n.9, 53 L.Ed.2d 448 (1977). The Court in *General Electric Co. v. Gilbert, supra*, quoting from *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), followed this statement of the role of interpretative rulings in determining the effect to give to certain EEOC guidelines:

We consider that the rulings, interpretations and opinions of the administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

429 U.S. at 125, 97 S.Ct. at 401, 50 L.Ed.2d at 343. See Davis, § 7:13. The Court refused to follow an EEOC regulation [16] which required that employers treat disabilities caused by pregnancy as temporary disabilities under health insurance and sick

---

**14.** 41 C.F.R. §§ 60–40.1 to 60–40–41 (1978).

**15.** 441 U.S. at 295, 99 S.Ct. at 1714.

**16.** 29 C.F.R. § 1604.10(b).

leave plans, on the grounds that the regulation was first promulgated eight years after the enactment of Title VII in 1964, contradicted an earlier opinion by the EEOC and the Wage and Hour Administrator under the Equal Pay Act, which allowed employers to exclude maternity disabilities as covered risks, and seemed to contradict the legislative history of Title VII.

■ The Court will assess each set of regulations at issue in the instant suit under these standards. The EEOC's primary regulation governing disclosure, 29 C.F.R. § 1601.22, was first issued in 1965 as 29 C.F.R. § 1601.20, 30 Fed.Reg. 8407. In this initial form, the regulation permitted prelitigation disclosure to the "charging party, the respondent, [and] witnesses ... as may be appropriate or necessary to the carrying out of the Commission's function...." § 1601.20, 30 Fed.Reg. 8409. The regulation was changed in 1977 to allow disclosure to the attorneys for the parties to a charge, and to rephrase the condition for disclosure as "where such disclosure is deemed necessary for securing appropriate relief," 42 Fed.Reg. 42024 (1977), the standard used in the current version of § 1601.22. In its opinion in this action, the Supreme Court noted that this current version "reflects no significant change from the original regulation." 449 U.S. at 600 n.17, 101 S.Ct. at 823 n.17. The Court also noted that Congress has not expressed its disapproval of this arrangement, and its silence suggests consent to the agency's practice. *Id.*, citing *United States v. Jackson*, 280 U.S. 183, 196–

97, 50 S.Ct. 143, 147–48, 74 L.Ed. 361 (1930). Moreover, the Court found that such disclosure is consistent with the legislative history of Title VII and the "coordinated scheme of administrative and judicial enforcement which Congress created to enforce Title VII." *Id.* 449 U.S. at 600, 101 S.Ct. at 823. For these reasons, § 1601.22 itself merits deference by this Court, and the Court perceives no ground for refusing to give effect to the terms of that regulation.

29 C.F.R. § 1610.17(d) was first issued by the EEOC on February 26, 1975, in a form identical to the present version. 40 Fed. Reg. 8174 (1975). Thus, it lacks the contemporaneous interpretation enjoyed by § 1601.22. It appears, however, that § 1610.17(d) has little, if any, direct effect on the parties to a discrimination charge, since it merely refers to "special disclosure rules ..." available at the EEOC which apply to the case files for "charging parties, aggrieved persons on whose behalf a charge has been filed, and entities against whom charges have been filed." The sole effect of this regulation is to serve notice of these "special disclosure rules," which at present are embodied in § 83 of the Compliance Manual, and the deference given § 1610.-17(d) will rise or fall with the validity of or effect given § 83.

■ Since § 83 of the Compliance Manual was not adopted until 1975, it too lacks the contemporaneous characteristic of § 1601.22. Also, the specific portions of § 83 complained of in this action [17] do not

---

**17.** Both Associated and the EEOC have, throughout this action, tended to refer to § 83 of the Compliance Manual in its entirety, without specifying the specific portions of § 83 complained of in this suit. As noted earlier in this opinion, Associated has focused its argument on the earlier prelitigation disclosure granted a charging party by § 83.3(a), and the enumeration of persons who may obtain disclosure in § 83.5(a)–(f). Associated's amended complaint, filed August 25, 1976, related its efforts to get assurances from the EEOC that the business records, documents and answers to interrogatories sought by the agency would not be revealed to "the charging parties, their counsel, or witnesses..." and the EEOC's response that its policy was "to disclose, to charging parties and their attorneys, case

files..." relevant to the charging party's case, as well as disclosure of "related case files." *Id.* at ¶¶ 16–18. Associated's second cause of action in its amended complaint quoted 29 C.F.R. § 1601.22 (then § 1601.22 (then § 1601.20) and § 1601.17(d) and referred to § 83 as embodying the "special disclosure rules" mentioned in § 1610.17(d). Associated alleged that these disclosure rules "contained in Section 83 ... confer a substantive benefit upon private parties in agency proceedings...." *Id.* at ¶¶ 24–30. Associated's third cause of action alleged that the agency's "regulations respecting disclosure to charging parties, their attorneys, and others ...," which were "incorporated in the 'special disclosure rules,' " were not adopted in compliance with § 553 of the APA. *Id.* at 31–35. Associated's memoranda after remand and

seem to comport with either the legislative history of Title VII or the enforcement mechanism established by Congress. § 83.-3(a) allows disclosure to a charging party or his attorney once 180 days have passed after a charge is filed or earlier if he can demonstrate a "compelling need for access . . .," while 83.5(e) allows disclosure to a respondent and its attorney only after a suit has been filed under Title VII. This distinction is inconsistent with the legislative intent behind the disclosure provisions in the Senate version of Title VII which was later passed by the House without amendment. Senator Humphrey, co-sponsor of the bill, related that the purpose of the § 706(b) and § 709(e) prohibition of disclosure to the "public" was to prevent wide or unauthorized dissemination of unproved charges in that it was a "ban on publicizing . . . aimed at the making available to the general public of unproven charges." 110 Cong.Rec. 12819, 12723 (1964). The other co-sponsor, Senator Dirksen, explained the § 706(b) ban on "public" disclosure of matters revealed during informal conciliation attempts as follows: "The maximum results from the voluntary approach will be achieved if the investigation and conciliation are carried on in privacy. If voluntary compliance with this title is not achieved, the dispute will be fully exposed to public view when a court suit is filed." 110 Cong. Rec. 8193 (1964). The Supreme Court noted this statement and concluded that it "suggests that the parties are considered part of the private efforts at conciliation, not members of the general public to whom the dispute will be 'fully exposed' after litigation begins." 449 U.S. at 599 n.16, 101 S.Ct. at 823 n.16. This is an apparent legislative intention to treat both parties equally and to do so beginning with the filing of a charge. Although Congress envisioned disclosure to both parties to a charge before suit is filed, § 83.5(e) denies it to the respondent until such event. The Court sees

no legitimate reason for providing earlier disclosure to the charging party, and the EEOC has failed to provide one. It is for the Congress, and the EEOC, to set the standard of care under Title VII. Also, the benefits to the enforcement process provided by disclosure described by the Supreme Court—enhancement of the agency's investigation, encouraging settlement since a party is more likely to settle when able to assess the strengths and weaknesses of his opponent's case, and the avoidance of unnecessary litigation [18] would best be served by disclosure to both parties to a charge. The provision of § 83.3(a) which generally precludes disclosure even to the charging party until 180 days after the charge is filed suffers from these same defects. Congress expected that disclosure would be made to the parties to a charge. The Supreme Court has concluded that such disclosure enhances, rather than hampers, the enforcement of Title VII. In such circumstances, the Court sees no reason to delay disclosure for any period after a charge is filed.

Nor do the discriminatory and delayed access rules of § 83.3(a) and § 83.5 fare well under the *Gilbert* and *Skidmore* examination of their consistency with earlier agency pronouncements. Currently, charging parties, their attorneys, and the other groups mentioned in § 83.5(a)–(d), are allowed access to their file once the investigation and conciliation period has passed, *i.e.*, 180 days after a charge is filed, or before then if they can show a "compelling need for access." Respondents and their counsel are denied access until a suit is filed. No one can obtain the material before the 180-day period expires, unless they can show a "compelling need."

EEOC practice regarding to whom disclosure is made and at what time has been plagued with inconsistency and confusion.

in support of its motion for summary judgment quoted § 83.5(a)–(d) and specifically referred to § 83.3(a) of the Manual, and no other sections. Neither party has provided evidence or argument on the nature of or impact of other

parts of § 83. The Court thus considers that Associated challenges the validity only of § 83.3(a) and § 83.5.

18. 449 U.S. at 600–02, 101 S.Ct. at 823–24.

In a November 9, 1965 memorandum,[19] the EEOC General Counsel stated that an investigator's report would be disclosed to counsel for the charging party after the passage of the investigation and conciliation period, which was then 30 or 60 days, and to counsel for the respondent after a civil action had been initiated. No one obtained disclosure before the end of the conciliation period. No mention was made of access by the charging party or the respondent without the participation of their counsel. Nor was there any safety valve provision allowing disclosure before expiration of the conciliation period upon a showing of compelling need. In November, 1967, the EEOC issued regulations on the availability of information under the Freedom of Information Act at 29 C.F.R. Part 1610.[20] § 1610.20 of these regulations was the predecessor to the present § 1610.17, but contained no § 1610.17(d) referring to "special disclosure rules" on file at the EEOC. On December 20, 1968, the EEOC issued its EEOC Manual Section 903 [21] entitled Release of Information, which stated:

> Information concerning pending cases, investigations, Commission discussions, and other program matters should only be disclosed to representatives of other agencies and to other persons on a "need to know" basis.
>
> . . . .
>
> . . . Information may be divulged under appropriate circumstances to the parties or to other enforcement agencies. When an employee is in doubt as to the appropriateness of any disclosure, he should check with his superior.
>
> All Office Directors will establish appropriate procedures to implement this policy and provide for periodic review of the effectiveness of said procedures.

This directive does not reflect any discriminatory or delayed access to the files.

Confusion over the agency's disclosure practices prompted the issuance on September 15, 1970 of a memorandum from the EEOC General Counsel to EEOC Field Directors and Field Attorneys.[22] Conceding that the agency's disclosure practices had been in disarray, the General Counsel noted that "there continues to be some uncertainty on the part of some field personnel regarding access to the Commission's investigative files." He went on to quote the rules set up in the November 9, 1965 memorandum, which allowed disclosure to the charging party's counsel after the expiration of the conciliation period and to counsel for the respondent once suit is filed. On May 1, 1974, the Legal Counsel Division of the Office of the EEOC General Counsel issued a memorandum to all attorneys in the Headquarters Office of the General Counsel and to Regional Litigation Centers, outlining procedures for Freedom of Information Act requests.[23] The original memorandum stated that "Title VII prohibits [EEOC] employees from making charges, conciliation matters, and EEOC reports public." The Legal Counsel Division sent out an amendment to this section of the memorandum on July 11, 1974, to elaborate on the disclosure provisions of Title VII, and to include the rule that "[u]pon request, . . . the Commission may disclose a 'sanitized' file to charging parties and their attorneys prior to their filing of a suit, in contemplation of litigation, and for purposes of drawing up a complaint." This statement implies that respondents were denied any access to the files at any time, and that the charging party could obtain them even before the conciliation period ended, both of which are inconsistent with prior and current practice.

Around this same time, counsel for the plaintiff in the instant action wrote to the General Counsel to inquire whether the November 9, 1965 and September 15, 1970 opinions of the General Counsel were still in

---

**19.** Defendants' Response to March 24 Order, Attachment B.

**20.** *Id.*, Attachment C.

**21.** *Id.*, Attachment D.

**22.** *Id.*, Attachment E.

**23.** *Id.*, Attachment H.

effect and, if they were not, whether they had been replaced by another opinion.[24] Counsel also requested a copy of the September 15, 1970 memorandum if it was still in effect, or a copy of whatever document replaced it. The Office of the General Counsel responded through an Associate General Counsel of the Legal Counsel Division, who was also the author of the May 1, 1974 memorandum and the July 11, 1974 amendment thereto.[25] She related that the opinions referred to by Associated's counsel "were discontinued after July 1, 1966," and attached a notice promulgated by the EEOC on December 9, 1970 at 35 Fed.Reg. 18692 which stated that the opinions were not to be construed as a "written interpretation or opinion of the Commission" within the meaning of § 713(b) of Title VII. After remarking that the earlier opinions "did not affect any persons other than the specific addressee(s)," she stated that "[t]he present EEOC policy is to disclose, to charging parties and their attorneys, case files, including EEO–1 reports, which are relevant to the charging party's case and which are to be used in connection with contemplated or pending litigation." This letter gives no indication of any discriminatory or delayed access to the EEOC files. In fact, it implies that only charging parties and their attorneys could obtain access to the files, and at any time. Then, on May 21, 1975, the EEOC promulgated the present version of § 83 of the Compliance Manual. Before doing so, it considered a draft of § 83 which would have allowed disclosure to those enumerated in § 83.5(a)–(d) and (f) only after expiration of the 180-day conciliation period except when the charge has been dismissed before such time. Respondents and their attorneys would have gained access to the files under this draft once the charging party had requested and reviewed the information in the file. The final version of § 83 made disclosure possible 180 days after the filing of the charge

or upon a showing of "compelling need" and to respondents only after suit has been filed.

The EEOC contends that § 83 merely codified the practices the agency had observed from its inception. The present record, and the outward appearances of the agency's practices, however, lead the Court to an opposite conclusion. The single consistent aspect of the agency's procedures has been their persistent lack of clarity. Only by a rather muddled progression has the agency arrived at the rules observed in the current Compliance Manual. The terms of its former memoranda regarding to whom disclosure could be made and at what times apparently varied over the years. The discriminatory and delayed access provided in § 83.3(a) and § 83.5 deviated from the policy of the agency as stated in its reply to the inquiry of plaintiff's counsel a year before. The "compelling need" criterion was added for the first time. Because of the inconsistency and confusion surrounding the development of these disclosure rules, the discriminatory and delayed access provisions of § 83.3(a) and § 83.5 merit little deference by this Court, and the defendant will be enjoined from giving force to them.

Associated has offered no arguments against the remaining provisions of § 83.5, and the Court perceives no ground for refusing to give effect to them, for they merely elaborate on the persons or organizations who are effectively the "parties" to a charge and their attorneys or representatives.

## II. THE APPLICABILITY OF § 553

■ As noted above, the notice and comment procedures of § 553 informal rulemaking do not apply to "interpretative rules, general statements of policy, or rules of agency organization, procedure or practice. . . ." [26] If an agency fails to follow § 553 in issuing a regulation to which that

---

**24.** *Id.*, Attachment I.

**25.** *Id.*, Attachment J.

**26.** In light of the Court's disposition of the question of the EEOC's authority to issue the

regulations involved herein, it may be unnecessary to address the § 553 problem. For the sake of finality, however, the Court will proceed to do so.

section applies, the reviewing court must declare the rule void and set it aside. *Aiken v. Obledo*, 442 F.Supp. 628, 650–51 (E.D.Cal.1977); 5 U.S.C. § 706. *See Vermont Yankee Nuclear Power Corp. v. NRDC, Inc.*, 435 U.S. 519, 548, 98 S.Ct. 1197, 1214, 55 L.Ed.2d 460 (1978).

The record reveals that 29 C.F.R. § 1601.22 was published as a proposed rule at 42 Fed.Reg. 42,022 *et seq.* (1977), and that § 553 notice and comment procedures were used in the development of the final form of the rule.[27] Since such procedures were not followed in the issuance of § 1610.17(d) and § 83.3(a) and § 83.5 of the Compliance Manual, however, the Court must consider whether the EEOC's failure to do so renders those rules invalid.

The § 553 informal rulemaking procedures are designed "to assure fairness and mature consideration of rules of general application." *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 764, 89 S.Ct. 1426, 1428, 22 L.Ed.2d 709 (1969). They give the agency an opportunity to educate itself before establishing rules and procedures and serve the salutary purpose of reintroducing public participation and fairness to affected parties after governmental authority has been delegated to unrepresentative agencies. *See Brown Express, Inc. v. United States, supra*, 607 F.2d at 701; *Batterton v. Marshall, supra*, 648 F.2d at 703.

The EEOC contends that the regulations at issue here were either "procedural" or "interpretative," or both, and thereby exempt from § 553.

There are essentially two approaches available to the Court to determine whether the EEOC was required to follow § 553 procedures when it issued § 1610.17(d) and §§ 83.3(1) and 83.5 of the Compliance Manual. One analysis is similar to that used above in assessing the agency's authority to establish these rules in that it examines the nature of the rule and assigns a label to it as "procedural," "substantive" or "interpretative." The other approach eschews such semantics, and renders § 553 applicable to

any regulation which has a "substantial impact" on the parties involved, regardless of whether it might be classified as "procedural," "substantive," or "interpretative."

As the Court has already noted, the substantive-procedural analysis under the first test of § 553 applicability strongly resembles that used to determine the agency's authority to issue the rule. Accordingly, the Court's conclusion above that § 1610.17(d), § 83.3(a) and § 83.5 do affect substantive rights and duties of the parties controls here as well and would require the EEOC to follow § 553 procedures to issue these rules. *See Chrysler Corporation v. Brown, supra*, 441 U.S. at 315, 99 S.Ct. at 1724.

The possibility still exists that these disclosure rules are "interpretative" and thereby exempt from § 553. *See Chrysler Corporation v. Brown, supra*, 441 U.S. at 315–16, 99 S.Ct. at 1724–25 (after concluding that the OFCC disclosure rules were substantive and thus beyond the agency's rulemaking authority and subject to § 553 procedures prerequisite to giving a regulation the binding force of law, the Court left open the possibility that the rules might be interpretative for purposes of § 553). The Court adopts the position, however, that whatever label may be affixed to § 1610.17(d), § 83.3(a) and § 83.5, the agency should have complied with § 553 procedures when they were issued if they had a substantial impact upon the rights and interests of affected parties.

This "substantial impact" test determines the applicability of § 553 procedures to agency regulations using the following principles:

'[W]hen a proposed regulation of general applicability has a *substantial impact* on the regulated industry, or an important class of the members or the products of that industry, notice and opportunity for comment should first be provided.' ... The exemption of [§ 553(b)(3)(A)] from the duty to provide notice by publication does not extend to those ... rules that depart from existing practice and have a substantial impact on those regulated.

---

**27.** See note 5, *supra*.

*Brown Express, Inc. v. United States, supra,* 607 F.2d at 702, relying on *Pharmaceutical Manufacturers Association v. Finch,* 307 F.Supp. 858, 863 (D.Del.1970) and *Aiken v. Obledo, supra,* 442 F.Supp. at 649–50 (E.D.Cal.1977). Apparently, the test originated in *National Motor Freight Traffic Association v. United States,* 268 F.Supp. 90 (D.D.C.1967), *affirmed per curiam,* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968), where the court held that § 553 applied to an informal procedure established by the Interstate Commerce Commission for repayment to shippers of past charges which a carrier acknowledged to have been illegal, because of the effects of this process on other carriers and shippers.

Several courts have failed to apply the substantial impact test, being content instead to rely on definitional labeling of the regulation at issue as "procedural" or "interpretative." *See Energy Reserves Group, Inc. v. Department of Energy,* 589 F.2d 1082 (Temp.Emer.Ct.App.1978); *Gosman v. United States,* 573 F.2d 31 (Ct.Cl.1978); *Chemical Specialties Manufacturers Association v. United States Equal Protection Agency,* 484 F.Supp. 513 (D.D.C.1980); *Hall v. EEOC,* 456 F.Supp. 695 (N.D.Cal.1978). This Court, however, declines to allow the outcome of the § 553 question to turn solely on semantics, especially where, as here, the conclusion that an agency regulation is "interpretative" is compelled by the fact that the agency lacks statutory authority to issue substantive or legislative rules. Such an automatic exemption from § 553 would allow the EEOC to establish regulations which trench upon substantive rights and obligations of the affected parties, yet never face § 553 scrutiny. Of course, a court would determine the legal effect to give the rule in a suit challenging their validity, but this review would come only if a suit is brought and only after a period of time during which the parties' rights and obligations would in a real sense be governed by the agency's "interpretative" pronouncements. Even in such a suit, the regulations would be entitled to some degree of judicial deference. Fairness dictates that interested parties be made aware of and afforded the opportunity to comment upon proposed regulations which portend to have a substantial impact upon their rights and interests. *See* Davis § 7:19 at 90–91.

Furthermore, the Court is convinced that the substantial impact test survives the Supreme Court's prohibition of the judicial formulation of hybrid rulemaking proceedings in *Vermont Yankee Nuclear Power Corp. v. NRDC, supra.* There, the Court addressed the issue of whether courts could impose on agencies procedures for their informal rulemaking activities in addition to the notice and comment provided by § 553, and rejected the argument that § 553 "merely establishes lower procedural bounds and that a court may routinely require more than the minimum when an agency's proposed rule addresses complex or technical factual issues or 'Issues of Great Public Import.'" 435 U.S. at 545, 98 S.Ct. at 1212. The Court relied on an apparent Congressional intention that the discretion of the agencies and not that of the courts be exercised to determine "when extra procedural devices should be employed." *Id.* at 546, 98 S.Ct. at 1213. Judicial review, said the Court, to determine whether an agency used procedures deemed by the court to be tailored to reach the "best" result would be completely unpredictable, forcing the agency to use full adjudicatory procedures in every instance to avoid risk of reversal. The Court also vested its decision on the rationale that courts review the agency's choice of procedures on the basis of the record produced at the agency hearing, and not on the basis of the information available to the agency when it decides to structure the proceedings a certain way, and on its conclusion that the adequacy of the record produced by an agency proceeding is not correlated directly to the type of procedural devices used, both of which would force the agency to conduct full adjudicatory hearings before promulgating any rule. The Court concluded:

In short, nothing in the APA, [the National Environmental Policy Act], the circumstances of this case, the nature of the issues being considered, past agency prac-

tice, or the statutory mandate under which the Commission operates permitted the court to review and overturn the rule-making proceeding on the basis of the procedural devices employed (or not employed) by the Commission so long as the Commission employed at least the statutory *minima*, a matter about which there is no doubt in this case.

*Id.* at 548, 98 S.Ct. at 1214. The substantial impact test is not aimed at determining when extra procedural devices beyond the *minima* of § 553 should be employed, but rather is simply one method for construing the Congressionally mandated exemptions from § 553 to ensure that the agency uses at least that statutory minima. Nor does this test present the risk, decried by the Court in *Vermont Yankee*, that the agencies will be forced to use full adjudicatory procedures in every case with consequent severe disruption of the Congressional scheme embodied in the APA. *Batterton v. Marshall, supra*, 648 F.2d at 708–09 n.83. *See* Davis, § 7:19.

The Court, therefore, will look at the actual effect and impact upon the public of the rules found in § 1610.17(d), § 83.3(a) and § 83.5 to determine whether notice and comment should have been provided in their promulgation. The court in *Brown Express, Inc. v. United States, supra*, ruled that a notice by the Interstate Commerce Commission that it was ending its former practice of notifying competing motor carriers when a carrier applied for emergency temporary authority under the Interstate Commerce Act to provide transportation to an area to meet immediate needs for services caused by an emergency did have a substantial impact on the motor carrier industry and § 553 procedures should have followed. The court concluded that even though the agency's prior practice of notifying competing carriers in such circumstances was an informal one which had never been formalized in a written requirement, the change in the policy could still have a substantial impact. The court also found that a substantial dollar volume of traffic was diverted by the grants of emergency temporary authority under the new scheme.

Furthermore, competing carriers had a strong incentive to place accurate information before the Interstate Commerce Commission in acting on such applications and failure to give them notice of the application would run the risk of depriving the agency of relevant information. 607 F.2d 702–03. A Secretary of Labor directive suspending the schedule used to certify aliens for entry into the United States for purposes of performing labor was found to be subject to § 553 by the court in *Lewis-Mota v. Secretary of Labor, supra*. The directive, said the court, had a substantial impact on both aliens and employers, for it effected a change in "existing rights and obligations..." by requiring aliens to submit proof of specific job offers before they were allowed to enter, which made it more difficult for employers to obtain workers in the affected occupations. *Id.* at 482. Thus, the court held that notice and opportunity for comment by the public should have been provided.

The court in *Sannon v. United States*, 460 F.Supp. 458 (S.D.Fla.1978), *remanded on other grounds*, 631 F.2d 1247 (5th Cir. 1980), held that § 553 procedures should have been used for new Immigration and Naturalization Service regulations specifying the type of evidentiary hearing afforded excludable aliens applying for political asylum in this country, primarily because they represented a "radical departure" from prior agency practice and policy. *Id.* at 466–67. In *Aiken v. Obledo, supra*, the court ruled that the Department of Agriculture Food and Nutrition Service's regulation concerning certification of a household for interim benefits under the Food Stamp Act of 1964 pending certification of the household's eligibility for food stamps had a substantial impact on those regulated because it was a departure from prior practice and clearly affected one's entitlement to the benefits provided under the Food Stamp Act. Similarly, the court in *Pharmaceutical Manufacturers Association v. Finch, supra*, concluded that the Food and Drug Administration's new regulations specifying the types of clinical investigations deemed necessary to

establish the effectiveness of drug products before agency approval should have been issued in compliance with § 553, essentially because the regulations narrowed the range of evidence from that previously considered by the agency in evaluating a drug's efficacy.

Other courts have found regulations exempt from § 553 under the substantial impact test. The Court in *Stoddard Lumber Co., Inc. v. Marshall*, 627 F.2d 984 (9th Cir. 1980), found no substantial impact in the Occupational Safety and Health Administration's schedule and manual governing the selection of businesses for general inspections under § 8(a) of the Occupational Safety and Health Act of 1970, 29 U.S.C. §§ 641, *et seq.* Since the program by which the choice of facilities to inspect is made is subject to control by the courts under the criteria of the fourth amendment, and the courts have experience in determining the reasonableness of searches equal to that of the administrator, the court concluded that owners would not be prejudiced by the absence of notice and comment procedures in the issuance of the selection procedures. The court in *McDonnell Douglas Corp. v. Marshall*, 465 F.Supp. 22 (E.D.Mo. 1978), *affirmed sub nom. Emerson Electric Co. v. Schlesinger, supra*, concluded that there was no substantial impact in a Memorandum of Understanding between the EEOC and the OFCC by which the agencies shared information on employer compliance with anti-discrimination laws and regulations. Since the employers had to produce the subject information to the EEOC anyway, the Court reasoned, the memorandum placed no additional burden on them. Furthermore, the Court relied on the fact that the policy of sharing the information had existed long before the two agencies entered into the Memorandum of Understanding. Lastly, the Court in *Pennsylvania v. United States*, 361 F.Supp. 208 (M.D. Pa.), *affirmed*, 414 U.S. 1017, 94 S.Ct. 440, 38 L.Ed.2d 310 (1973), held that the Interstate Commerce Commission's new procedures to accelerate proceedings and expedite the disposition of railroad applications for abandonment of lines carried no sub-

stantial impact, since all parties receive notice of the actual abandonment proceedings and could submit evidence at that time, and the only effect of the new procedures was to accelerate the preparation of their case.

Using these principles, the Court concludes that the disclosure rules embodied in § 1610.17(d), § 83.3(a) and § 83.5 had a substantial impact upon interested persons or parties and § 553 procedures should have been followed in their promulgation. As the Court has already noted, the rules are of a substantive nature, for they affect the rights and obligations of the parties to an EEOC charge regarding access to the agency's investigative files before suit is filed. In turn, the rules, primarily because of the disparate treatment given charging parties and employers, affect the parties' rights and obligations under Title VII itself, and the EEOC attempts to use them to achieve such effects. The rights and privacy interests of persons or entities which provide information to the agency are also affected. The promulgation of § 1610.17(d) and the disclosure rules in § 83.3(a) and § 83.5 to which it referred removed the uncertainty and ambiguity which had clouded the agency's policies and practices regarding disclosure of its files since the agency's inception. The discriminatory treatment of charging parties and respondents, and the 180-day delay coupled for the first time with a "compelling need" exception, deviated from the EEOC's apparent prior practice. The impact of these sections of the Compliance Manual is not lessened by the fact that the manual is an internal memorandum, for § 1610.17(d) refers to the special rules on file at the agency as those which govern disclosure rights. In fact, these provisions of the manual seem to depart from the disclosure terms mentioned in § 1601.22, which imply that disclosure is available at any time before suit, and is available to charging parties and employers at the same time under the same conditions. The real, practical effects of the disclosure rules are generated by the Compliance Manual. Because these rules substantially affect substantive rights of the parties subject to the

regulation, and of members of the public, notice and comment should have been allowed before their issuance. This notice and opportunity for comment by interested parties would have allowed the agency to educate itself before establishing the rules, and might have caused the agency to provide some clarity regarding the grounds for the distinctions drawn in the rules. Even before this Court the agency presented various alternative, even conflicting, justifications for the rules. Use of § 553 procedures would also have provided a greater degree of fairness to the public in the promulgation of these rules, rather than allowing the agency to refer loosely in a published regulation to special rules housed in its office and promulgate the governing provisions in an internal memorandum effectively shielded from public inspection. Failure to comply with § 553 renders the discriminatory access and 180-day delay in access provisions of § 83.3(a) and § 83.5, referred to in § 1610.17(d), invalid, and the defendants are to be enjoined from their further enforcement.

An appropriate order will issue.

## ORDER

For the reasons stated in the memorandum of the Court this day filed, and deeming it just and proper so to do, it is ADJUDGED and ORDERED that plaintiff's motion for summary judgment be, and the same is hereby granted, and defendants' motion for summary judgment be, and the same is hereby denied, in the following respects:

1. The Equal Employment Opportunity Commission ("EEOC") regulations found at 29 C.F.R. § 1610.17(d) and § 83.3(a) of the agency's Compliance Manual are hereby declared to be void, invalid and unenforceable to the extent that they delay disclosure of information in EEOC case files for any period of time after a charge is filed, and the EEOC, its agents, employees and all others acting in its behalf are hereby enjoined from enforcing these rules to such extent.

2. The EEOC regulations found at 29 C.F.R. § 1610.17(d) and § 83.5 of the agency's Compliance Manual are hereby declared to be void, invalid and unenforceable to the extent that they authorize prelitigation disclosure of information in EEOC case files to any of the persons or groups enumerated in § 83.5(a)–(d) and (f) but deny such disclosure to respondents or their attorneys until after suit is filed under Title VII, and the EEOC, its agents, employees and all others acting in its behalf are hereby enjoined from enforcing these rules to such extent.

It is further ADJUDGED and ORDERED that plaintiff's motion for summary judgment be, and the same is hereby denied, and the defendants' motion for summary judgment be, and the same is hereby granted in all other respects, and this action stands DISMISSED.

Let the Clerk send a copy of this order and the accompanying memorandum to all counsel of record.